IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN MCCOWN,                                     Case No. 6:13-cv-01716-AA
                                                       OPINION AND ORDER
        Plaintiff,

  v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.
_____

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, Oregon 97309
    Attorney for plaintiff

S. Amanda Marshall
Adrian L. Brown
Ronald K. Silver
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Kathy Reif
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Brian McCown brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On April 13 30, 2010, plaintiff applied for SSI and DIB. Tr. 165-73. His applications were denied initially and upon reconsideration. Tr. 122-31, 135-41. On July 24, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-79. On September 18, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 10-24. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on October 1, 1966, plaintiff was 29 years old on the initial alleged onset date of disability and 45 years old at the time of the hearing.[1] Tr. 165, 170, 609. Plaintiff completed highschool and attended college classes for approximately ten

---

[1] Plaintiff initially alleged disability as of December 1, 1995. Tr. 165, 170. At the hearing, he amended his alleged onset date to July 3, 2008, to correspond more closely to the dates on which he ceased abusing drugs and alcohol, and started experiencing seizures. Tr. 36, 54.

Page 2 - OPINION AND ORDER

years, although he did not obtain a degree. Tr. 36, 192, 609. He worked previously as a musician and cook. Tr. 63, 193. Plaintiff alleges disability due to anxiety, depression, seizures, and back, shoulder, and knee pain. Tr. 40, 49, 191.

**STANDARD OF REVIEW**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential

Page 3 - OPINION AND ORDER

process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this

Page 4 - OPINION AND ORDER

burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since December 1, 1995. Tr. 12. At step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease of the spine, degenerative joint disease of the knees, obesity, history of grand mal seizures with continuing petit mal seizures, and major depressive, mood, anxiety, and mental disorders. Id. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 15.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ found plaintiff's residual functional capacity ("RFC") limited him to "less than a full range of light work." Tr. 16. Specifically, plaintiff was limited to: lifting, carrying, pushing, and pulling fifteen pounds occasionally and ten pounds frequently; standing and walking for up to two hours in an eight-hour workday; no climbing of ladders or scaffolds; no exposure to hazards, including unprotected heights or dangerous machinery; simple, routine tasks; and no "production-pace type jobs in order to keep work stress at a low level." Id.

At step four, the ALJ found plaintiff could not perform his past relevant work. Tr. 22. At step five, the ALJ concluded, based

Page 5 - OPINION AND ORDER

on the VE's testimony, plaintiff could perform a significant number of jobs existing in the national and local economy despite his impairments, such as optical goods inspector, labeler, and table worker. Tr. 23-24. Accordingly, the ALJ found plaintiff not disabled under the Act. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting the medical evidence furnished by David Freed, Ph.D., Anders Goranson, Psy.D, and Linda Gonzales, Ph.D.; (2) failing to find him presumptively disabled at step three under listing 11.03; and (3) failing to account for all of his impairments in the RFC.

I. Medical Evidence

Plaintiff first contends that the ALJ failed to fully account for the limitations articulated by Dr. Freed, despite fully crediting that opinion. In addition, plaintiff asserts his global assessment of functioning ("GAF") scores, as assigned by Drs. Goranson, Gonzales, and Freed, are alone sufficient to establish his entitlement to benefits.

A. Dr. Freed

In August 2012, Dr. Freed performed a one-time examination on plaintiff at the request of his attorney. Tr. 608-14. Dr. Freed's assessment was based on plaintiff's subjective statements, a clinical interview, objective tests, and a review of certain medical records. Id. The doctor diagnosed plaintiff with major depressive disorder, alcohol dependence in full sustained remission, and mood, anxiety, and mental disorders "due to Seizure

Disorder." Tr. 613. In a corresponding "Functional Assessment of Work-Related Mental Activities" form, Dr. Freed checked boxes reflecting that plaintiff experienced mild to moderate impairment in a number of categories due to his "reported . . . history of repeated head trauma with an associated seizure disorder." Tr. 616-17.

The ALJ found "Dr. Freed's reports credible and [formulated] non-exertional limitations consistent with his assessment." Tr. 21. Accordingly, the ALJ determined plaintiff's major depressive, mood, anxiety, and mental disorders were severe at step two. Tr. 12. The ALJ also limited plaintiff's RFC to jobs involving only "simple, routine work tasks" and low-stress, non-production pace activities. Tr. 16.

Thus, contrary to plaintiff's assertion, the ALJ did not reject Dr. Freed's opinion. Rather, the ALJ reasonably translated Dr. Freed's report into concrete functional limitations. See Brown v. Colvin, 2014 WL 6388540, *3 (D.Or. Nov. 13, 2014) ("it is the responsibility of the ALJ, not the claimant's physician, to determine the RFC and the ALJ's findings of RFC need not correspond precisely to any physician's findings") (citation and internal quotations and brackets omitted). Critically, plaintiff does not detail what additional restrictions flow from Dr. Freed's assessment and there is no medical evidence in the record providing that plaintiff's mental impairments created functional limitations beyond those already identified in the RFC. Tr. 300, 318-20, 328, 332-34, 342, 355-61, 516-24, 608-17; see also McLeod v. Astrue, 640

F.3d 881, 888 (9th Cir. 2011) (as amended) (claimant bears the burden of establishing how an alleged error is harmful).

Finally, plaintiff's contention that the ALJ erred by interpreting Dr. Freed's use of the term "moderate" to inhere to severity, as opposed to frequency, is not persuasive. The check-the-box form furnished by plaintiff's attorney denoted five ratings: none, mild, moderate, moderately-severe, and severe. Tr. 616. The term "none" indicated no impairment and the term "severe" denoted "not able to perform [the] designated task or function on a regular, reliable, and sustained schedule." Id. The three intermediate ratings represented the "ab[ility] to perform [the] designated task or function," but with escalating levels of "noticeable difficulty" - i.e. up to ten percent of the workday or week, eleven to twenty percent of the workday or week, and more than twenty percent of the workday or week. Id.

The ALJ found this form "flawed and biased because only [checking] the 'none' box would clearly indicate [the] ability to perform a function in a work setting . . . [four out of the five choices] could be interpreted as disabling." Tr. 22; see also Tr. 73-74 (VE testifying that an employer would not tolerate more than one to two absences per month on a sustained basis). The ALJ resolved that, consistent with his narrative report, Dr. Freed used "moderate" as that term is generally understood - i.e. "moderate severity, 3 on a scale of 1 to 5." Tr. 22. Indeed, the objective tests administered by Dr. Freed revealed a number of areas of strength; plaintiff's IQ was in the high-average range, his level

Page 8 - OPINION AND ORDER

of academic achievement was greater than 12.9 grades, his visuospatial abilities and language testing were in the normal range, and his motor skills were "very superior." Tr. 612. Dr. Freed only noted two areas in which plaintiff scored below average: his overall memory was "mildly impaired" and he had "some difficulty" with attention. Id.

In sum, the ALJ interpreted Dr. Freed's check-the-box assessment to indicate some degree of impairment in regard to certain tasks, as opposed to total disability under the Act. As such, the ALJ limited plaintiff to simple, routine, non-production pace, low-stress work. The Court finds this reading of Dr. Freed's assessment rational, such that it must be upheld.[2] Burch, 400 F.3d at 679. The ALJ's decision is affirmed in this regard.

B. GAF Scores

"The GAF scale is a tool for reporting the clinician's judgment of the individual's overall level of functioning [such that] a GAF score reflects a snapshot of a claimant's presentation on the day of the examination." Davis v. Astrue, 2012 WL 4005553, *9 (D.Or. June 12), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (citation and internal quotations omitted). It is "but one element of a doctor's conclusion." Id. (citation and internal

---

[2] Alternatively, plaintiff argues that the ALJ neglected to adequately develop the record in regard to Dr. Freed's opinion. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate." Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Those circumstances do not exist here.

Page 9 - OPINION AND ORDER

quotations and brackets omitted). In other words, a "GAF score does not determine disability." Id. (citations omitted). Rather, the dispositive inquiry is whether, based on the entire record, "the ALJ adequately accounted for [the claimant's] limitations in the RFC." Id.

Here, Dr. Goranson, under the supervision of Dr. Gonzales, and Dr. Freed each performed one-time psychological evaluations, in which they assessed plaintiff with GAF scores of 45 and 50, respectively.[3] Tr. 516-24, 608-17. Yet, as discussed above, Dr. Freed's overall report revealed a greater level of functioning than plaintiff's GAF score indicated and the same is true for Dr. Goranson. Notably, although Dr. Goranson diagnosed plaintiff with panic disorder without agoraphobia, adjustment disorder, alcohol dependence in full sustained remission, and polysubstance dependence in full sustained remission, he found that plaintiff had good eye contact, good kinetics, normal speech, generally appropriate and bright affect congruent to his mood, linear goal oriented thought processes, fair judgment; and normal thought content, full orientation, concentration, memory, abstraction, intelligence, and fund of knowledge. Tr. 522-23. The only area of

---

[3] A GAF score between 41 and 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000); Tr. 18. "The GAF scale has been abandoned in the 2013 revision of the Diagnostic and Statistical Manual of Mental Disorders." Gayman v. Colvin, 2014 WL 3734158, *5 n.1 (D.Or. July 25, 2014).

Page 10 - OPINION AND ORDER

weakness was plaintiff's "poor to fair" insight.[4] Tr. 523.

Moreover, treatment notes from other providers generally describe plaintiff as stable when taking his prescribed medications and engaging in a number of daily activities, such as attending meetings and appointments, taking classes to become a certified personal trainer, and exercising. See, e.g., Tr. 280, 300-01, 318-19, 328, 333, 342, 347, 392, 394, 480, 521, 529, 595, 602. The reports of Drs. Goranson, Gonzales, and Freed, when construed in their entirety and in conjunction with the other evidence, are congruent with plaintiff's RFC. The ALJ's assessment of the medical opinion evidence is upheld.

## II. Listing 11.03

Plaintiff next argues that the ALJ erred at step three in determining that his impairments did not meet or equal listing 11.03. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. (citation omitted). Listing 11.03 relates to

---

[4] To the extent plaintiff asserts the ALJ erred by "fail[ing] to consider [Dr. Goranson's] opinion," his argument is unavailing. Pl.'s Opening Br. 13. The ALJ expressly discussed the "August 2011 VA psychiatric evaluation." Tr. 18. Any error in failing to assign a specific weight to this opinion was harmless because Dr. Goranson did not delineate any concrete functional limitations. Tr. 516-24; see also Corso v. Colvin, 2014 WL 950029, *10 (D.Or. Mar. 11, 2014) ("because the reports of Drs. Bell, Wong, and Luckwitz did not contain any functional limitations, they were not probative as to what kind of work plaintiff could perform despite his impairments and, therefore, the ALJ was not required to formally assess, or even discuss, them") (citations omitted).

Page 11 - OPINION AND ORDER

epilepsy and requires seizures "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." 20 C.F.R. § 404, Subpt. P, App. 1 § 11.03.

At step three, the ALJ expressly considered listing 11.03 but found it was unmet because "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria." Tr. 15. Substantial evidence supports the ALJ's conclusion. As the ALJ noted, plaintiff "has not been diagnosed with a seizure disorder" and his doctors disagree regarding the cause of his symptoms. Tr. 14. More importantly, there is no evidence, medical or otherwise, establishing the requisite level of frequency. Plaintiff testified at the hearing that he had two seizures in the past eight months. The medical evidence similarly details several month-long gaps between symptoms. Tr. 44-45, 305, 356, 472-73. The ALJ's step three finding is affirmed.

III. <u>RFC Assessment</u>

Plaintiff also asserts that the ALJ's RFC is inadequate because: (1) "work other than 'production-pace type jobs' may be stressful too;" and (2) it does not include any functional limitations related to his "post seizure pain" or inability to "interac[t] with co-workers, peers or supervisors." Pl.'s Opening Br. 14, 16-17.

The RFC is the maximum a claimant can do despite his limitations. <u>See</u> 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and

Page 12 - OPINION AND ORDER

evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The Court finds that the medical and other evidence of record supports the ALJ's RFC. Initially, plaintiff's conclusory statement that the ALJ erred because jobs other than those identified by the VE are "arguably" stressful is without merit. I find no credible evidence[5] establishing that additional stress-related limitations are warranted. See Bagby v. Astrue, 2012 WL 1114298, *12 (D.Or. Feb. 7), adopted by 2012 WL 1114288 (D.Or. Apr. 3, 2012) ("the fact that plaintiff perceives the job of janitor as unsuitable is irrelevant; where, as here, the VE's testimony does not conflict with the DOT, the ALJ can rely on that opinion if it is properly based on the claimant's RFC and other vocational factors").

Furthermore, while his medical providers noted mild to moderate impairment in social functioning, the record reveals that plaintiff socialized with friends and family, attended appointments and classes, and accompanied his mother to the store. See, e.g., Tr. 243, 300, 310, 318-19, 328, 334, 338, 342, 347, 358, 521, 609. At the hearing, plaintiff denied difficulty being around people,

---

[5] Plaintiff relies exclusively on his hearing testimony to establish error; however, the ALJ found plaintiff not credible and he does not challenge that finding on appeal. Tr. 17-20; see generally Pl.'s Opening Br.

Page 13 - OPINION AND ORDER

aside from typical stage fright, and there is no evidence in the record demonstrating that he experienced problems interacting with coworkers or supervisors. Tr. 63-64.

Regardless, the VE testified that the jobs identified were unskilled and did not involve teamwork. Tr. 71-73. The positions of optical goods inspector and labeler do not entail public contact.[6] DOT § 713.687-034, available at 1991 WL 679275; DOT § 209.587-010, available at 1991 WL 671797; see also SSR 85-15, available at 1985 WL 56857 (unskilled "jobs ordinarily involve dealing primarily with objects, rather than with data or people"). Thus, even assuming the ALJ erred in this regard, such an error was harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

Lastly, plaintiff has not cited to, and the Court is not aware of, any credible evidence establishing a need for additional pain-related restrictions. See Pl.'s Opening Br. 16 (relying solely on plaintiff's hearing testimony that he experiences "'quite a bit of pain' the next day" following a seizure) (quoting Tr. 59-60). The Court finds the ALJ's exertional and non-exertional restrictions sufficient to account for the sporadic periods plaintiff sustains post-seizure related pain. The ALJ's RFC and step five finding are affirmed.

---

[6] The VE and ALJ misidentified the DOT code for the table worker position. Tr. 24, 72; DOT § 739.687-128, available at 1991 WL 680217. Even excluding this representative occupation, a significant numbers of jobs exist. Tr. 23-24, 71-72; Bergman v. Astrue, 2012 WL 1357667, *4 (D.Or. Apr. 19, 2012).

**CONCLUSION**

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 6th day of December 2014.

_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER